# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

GARNETT DuBOSE,

    Plaintiff,                              CASE NO. 07-CV-13128

v.                                       DISTRICT JUDGE PAUL D. BORMAN
                                        MAGISTRATE JUDGE CHARLES BINDER

WARREN EVANS,

    Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(Dkt. 16)

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant's motion for summary judgment be **GRANTED** and the case be dismissed with prejudice in its entirety.[1]

## II.    REPORT

### A.    Introduction

Plaintiff filed this *pro se* civil rights complaint on July 26, 2007, alleging that his due process rights were violated by the failure of Defendant Wayne County Sheriff Warren Evans to "bring or arrange a [sic] extradition hearing in a timely manner." (Dkt. 1 at 3.) Plaintiff seeks "treble monetary damages." (*Id.*) Plaintiff was incarcerated in the Wayne County Jail at the time

---

[1] If this Report is adopted, several pending motions will be moot. (Dkts. 23 & 25.)

he filed this complaint. He is currently incarcerated in the Lieber Correctional Institution in Ridgeville, South Carolina.

By order of U.S. District Judge Paul D. Borman, this case was referred to the undersigned magistrate judge for general case management on August 15, 2007. (Dkt. 4.) Pending is the above-entitled motion filed by Defendant Evans. (Dkt. 16.) Plaintiff filed a response opposing the motion (Dkt. 21.) Upon review of the documents, I conclude that pursuant to E.D. Mich. LR 7.1(e)(2), this motion is ready for Report and Recommendation without oral argument.

**B.     Background**

Plaintiff was convicted of forgery, burglary, and petty larceny in South Carolina on December 14, 1992. (Dkt. 16 at 5; Ex. A.) After serving three years, the balance of his seven-year sentence was suspended and he was sentenced to serve two years probation under the supervision of the South Carolina Parole Board. (*Id.*) One of the conditions of probation was that Plaintiff was not to leave the state of South Carolina without authorization. (*Id.*) The Order also provided that Plaintiff "waive[d] all extradition rights and process and agree[d] to return to South Carolina when directed to by the Court or pursuant to a warrant." (*Id.* at Ex. A ¶ 10.) On March 28, 1995, South Carolina issued an arrest warrant and affidavit for Plaintiff for violating several conditions of probation, including "[c]hanging his residence without permission" and "absconding supervision by failing to return [from Michigan] to South Carolina on September 2, 1994." (*Id.* at Ex. B.)

Although Plaintiff enjoyed nearly a decade in Michigan without legal incident, on March 8, 2006, Plaintiff was sentenced to 1-5 years imprisonment for theft of an automobile. (*Id.* at Ex. C.) Plaintiff was released on parole on March 7, 2007, and was subject to supervision until November 20, 2008. (*Id.*)

Sometime in early June 2007, Plaintiff was arrested for committing the misdemeanor offense of receiving and concealing stolen property. (Pl. Resp., Dkt. 21 at 6; *Id.* at Ex. D.) On June 20, 2007, Plaintiff was arrested for violating the conditions of his Michigan parole and was brought to the Wayne County Jail and booked by Wayne County employee Alan Shulgon, at which time a Law Enforcement Information Network ("LEIN") search indicated that there was an outstanding warrant for Plaintiff's arrest issued by the state of South Carolina." (Dkt. 16 at Ex. D.) Plaintiff indicates that on June 21, 2007, his parole officer, Nicole Odom, informed him "of the South Carolina plan for extradition." (Dkt. 21 at 6-7.) Sergeant Hunter of Internal Affairs indicated that Plaintiff was to be "transferred to Division I for Extradition" on June 26, 2007, after having spoken with Lisa McGill from South Carolina. (Dkt. 16 at Ex. D.)

Plaintiff appeared in the 24th District Court on the misdemeanor charge on July 5, 2007, pleaded "no contest," and was sentenced to "93 days, with a credit of 23 days, 70 days to be served, this sentence was not to inhibit the extradition process but to be served if plaintiff was not extradited." (Dkt. 21 at 7; Dkt. 16 at Ex. D.) Plaintiff filed a grievance on July 6, 2007, requesting an extradition hearing, and continued to ask when he would be extradited. (Dkt. 21 at 7-10.) On July 23, 2007, Plaintiff was told by his social worker that he "should be extradited any day." (*Id.* at 8.) On September 26, 2007, Plaintiff was released from the Wayne County Jail into the custody of an agent of the state of South Carolina after verifying the outstanding warrant on the LEIN. (Dkt. 16 at Ex. E ¶ 7.) Plaintiff spent three months, six days, and 38 minutes in the Wayne County Jail before being extradited. (*Id.* at Ex. D.)[2]

---

[2] The Court notes that one of Plaintiff's pending motions seeks to compel Wayne County to provide information regarding the duration of his stay in the Wayne County Jail. I conclude that the information Plaintiff requested in the above referenced Exhibit was served on him with the instant motion and brief.

C. Analysis and Conclusions

1. Motion Standards

A motion for summary judgment will be granted under Rule 56(c) of the Federal Rules of Civil Procedure where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). The Sixth Circuit has explicitly instructed that it is

"utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406.

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Where a plaintiff is proceeding without the assistance of counsel, the court is required to liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). However, courts may not rewrite a complaint to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999), or construct the plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993). In other words, the court may not "conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or create a claim for the plaintiff, *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975), because to hold otherwise would require the court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

The elements of a claim under 42 U.S.C. § 1983 are: (1) the violation of a right secured by the federal Constitution or federal law that was (2) committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).

2. **Due Process**

Plaintiff alleges that his due process rights were violated by Defendant's failure to "bring or arrange a [sic] extradition hearing in a timely manner" (Dkt. 1 at 3), but Plaintiff does not allege that the extradition itself was wrongful. Defendant argues that he is entitled to summary judgment since "there is no genuine dispute that plaintiff waived his pre-extradition rights and process by executing a written waiver as a condition of his probation in the States of South Carolina" and "courts have generally upheld the validity and enforceability of these waivers." (Dkt. 16 at 8.)

In order to prevail on a procedural due process claim in the Sixth Circuit, plaintiff must: (1) demonstrate that he is deprived of liberty or property as a result of established state procedure that itself violates due process rights; or (2) prove that the defendant deprived him of liberty or property pursuant to a "random and unauthorized act" and that available state remedies would not adequately compensate for the loss. *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991).[3] Plaintiff has the burden of pleading and proving that the state remedies for redressing the wrong are inadequate. *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1983). Plaintiff in this case has not alleged that established state procedures violate due process rights nor has he alleged the

---

[3]This holding is derived from *Parratt v. Taylor*, 451 U.S. 527, 537, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed.2d 662 (1986), which held that the deprivation of liberty or property interests by state employees does not give rise to federal due process claims unless the state fails to afford an adequate post-deprivation remedy. Thus, "a procedural due process claim will not be stated unless the plaintiff pleads and proves that available state remedies are inadequate to redress the wrong." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995).

6

absence of state remedies to redress any procedural wrong. Therefore, I suggest that summary judgment in favor of Defendant Sheriff Evans could be granted as to the procedural due process claim on this ground alone.

Furthermore, even if Plaintiff had alleged that established state procedures violated his rights, I suggest the result would be the same. The authority to extradite fugitives from one state to another derives from Article IV § 2, Clause 2 of the U.S. Constitution[4] and is implemented by federal statute. 18 U.S.C. § 3182.[5] Both the constitutional and statutory provisions confer rights and obligations on the executive authorities of the states; neither confer any rights on the fugitive. *See Lascelles v. State*, 148 U.S. 537, 542, 13 S. Ct. 687, 37 L. Ed. 549 (1893) ("The sole object of the provision of the constitution, and the act of congress to carry it into effect, is to secure the surrender of persons accused of crime, who have fled from justice of the state whose laws they are charged with violating[,] [n]either . . . confers, either expressly or by implication, any right or privilege upon such fugitives") (cited with approval in *Barton v. Norrod*, 106 F.3d 1289, 1298 (6th Cir. 1997)). In *Barton*, the Sixth Circuit held that "[a]lthough a number of courts allow a § 1983 claim when officers fail to comply with extradition procedures established by the Uniform

---

[4]Article IV § 2, Clause 2 states:

A person charged in any State with Treason, Felony, or other crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.

[5]18 U.S.C. § 3182 provides:

Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear.

Criminal Extradition Act ('UCEA'), we believe that the constitutional and statutory provisions are not designed to protect fugitives[; r]ather, they are designed to facilitate the administration of justice between states." *Barton*, 106 F.3d at 1295. *Accord Barnett v. Clark*, No. 1:06-cv-235, 2008 WL 189856, *8 (E.D. Tenn. Jan. 22, 2008); *Wilbanks v. City of Corinth, Mississippi*, No. 99-1109, 2002 WL 1397240, *2 (W.D. Tenn. Jan. 4, 2002). The *Barton* court also stated that to "hold otherwise would mean that . . . a fugitive would have secured a variety of valuable personal rights simply by making it 'all-ee all-ee in free' across the state line [and] Section 1983, unlike football, should not be a game of inches." *Id.* In addition, the court noted that "the right to challenge extradition [has] become[] moot: the fugitive is no longer being detained by the asylum state, and so, the legality of his or her detention there is no longer an issue." *Id.* at 1298. The Sixth Circuit went on to distinguish itself from "those courts that have suggested that deprivation of the right to file a habeas corpus petition alone is sufficient to state a § 1983 cause of action [because they are] misguided."[6] *Id.*

Consequently, I suggest that no § 1983 cause of action challenging extradition procedures exists, especially where, as here, Plaintiff has already been returned to the demanding state. Thus, Defendant is entitled to summary judgment on this ground as well.

Even assuming some cause of action could be found to exist, the statutory law does not support a cause of action on the instant facts. Since the federal statute, 18 U.S.C. § 3182, "failed to address the specific procedures to be followed, the National Conference of Commissioners on Uniform State Laws approved in 1926 a draft of the Uniform Criminal Extradition Act" ("UCEA") which was "revised in 1936 and has been adopted by 48 states," including Michigan. *Barton*, 106

---

[6]The Sixth Circuit's approach is a minority view. *See Barton,* 106 F.3d at 1293-94, and the cases cited therein.

F.3d at 1296, n.6; MICH. COMP. LAWS §§ 780.1 *et seq.* The United States is not a party to the UCEA. *Mann v. Warden of Eglin Air Force Base*, 771 F.2d 1453, 1454 (11th Cir. 1985); *Wilson v. Fenton*, 684 F.2d 249, 252 (3rd Cir. 1982); *Smith v. District of Columbia*, No. 01-7027, 2001 WL 1154425, *1 (C.A.D.C. Aug. 6, 2001). Thus, the UCEA has its roots in federal law but is actually the law of the individual states having adopted it.[7]

Michigan law adopting the UCEA provides that "it is the duty of the governor of this state to have arrested and delivered up to the executive authority of any other state of the United States any person charged in that state with treason, felony, or other crime, who has fled from justice and is found in this state." MICH. COMP. LAWS § 780.2. Michigan further requires that:

> No demand for extradition of a person charged with a crime in another state shall be recognized by the governor unless in writing, accompanied by the following papers: (1) Governor's requisition under the seal of the state; (2) Prosecutor's application for requisition for the return of a person charged with crime, wherein shall be stated: (a) The name of the person so charged; (b) The nature of the crime; (c) The approximate time, place and circumstances of its commission; (d) That the accused was present in demanding state at the time of commission of alleged crime; (e) That he thereafter fled from the state; (f) The state in which he is believed to be, including the location of the accused therein, at the time the application is made; certifying that, in the opinion of the prosecuting attorney, the ends of justice require the arrest and return of the accused to the demanding state for trial, and that the proceeding is not instituted to enforce a private claim; (3) Verification by affidavit of such application . . . .

MICH. COMP. LAWS § 780.3. Subsections 2(d) and (e) have been expanded by MICH. COMP. LAWS § 780.3a to allow the governor to "also surrender, on demand of the executive authority of any other state, any person in this state charged in such other state in the manner provided in Section 3 with committing an act in this state, or in a third state, intentionally resulting in a crime in the state whose executive authority is making the demand . . . even though the accused was not in that

---

[7]South Carolina is one of the two states that has not adopted the UCEA along with Mississippi. *Jenkins v. Garrison*, 265 Ga. 42, 44, n.3, 453 S.E.2d 698, 701, n.3 (Feb. 20, 1995).

state at the time April 7, 2008, of the commission of the crime, and has not fled therefrom . . . ." Furthermore, "[i]f the governor decides that the demand should be complied with, he or she shall sign a warrant of arrest . . . ." MICH. COMP. LAWS § 780.6. Michigan law also provides that "[n]o person arrested upon such warrant shall be delivered over to the agent whom the executive authority demanding him shall have appointed to receive him unless he shall first be taken forthwith before a judge of a court of record in this state, who shall inform him of the demand made . . . " and his rights to "procure legal counsel" and "test the legality of his arrest." MICH. COMP. LAWS § 780.9. Interestingly, Michigan law demands compliance with MICH. COMP. LAWS §780.9 by making "wilful disobedience" to that section by a Michigan authority a "misdemeanor" carrying a potential fine of not more than $1,000 and potential incarceration for up to six months. MICH. COMP. LAWS § 780.10.

Michigan law allows for incarceration pending requisition for 30 days, which may be extended by a judge or magistrate for an additional 60 days, or 90 days total. MICH. COMP. LAWS §§ 780.14, 780.16. However, "[i]f a criminal prosecution has been instituted against a person under the laws of this state and is still pending, the governor may surrender the person on demand . . . or hold the person until he or she has been tried . . . and punished in this state." MICH. COMP. LAWS § 780.18.[8]

Plaintiff argues that his 93-day misdemeanor sentence was not to inhibit extradition and that extradition was improperly delayed. (Dkt. 21 at 7.) Plaintiff was properly punished for 93 days in Michigan and spent only 3 days incarcerated beyond his misdemeanor sentence under this section, which would have allowed for 30 days incarceration (or 90 days with extensions); thus,

---

[8]If arrested for a crime punishable by incarceration exceeding one year, the "restrictions on length of commitment specified in sections 14 and 16 are not applicable during the period that the criminal prosecution is pending in this state." MICH. COMP. LAWS § 780.18.

I suggest that Plaintiff would have no viable argument as to the timing of extradition under this section.[9]

Defendants argue that Plaintiff has waived all extradition rights as a condition of his probation in South Carolina. (Dkt. 16 at 8; Ex. A ¶ 10.) Michigan law provides a process to waive extradition rights pursuant to a hearing,[10] but also requires the law enforcement agency holding a person who has "broken the term of his or her probation, parole . . . [to] immediately deliver the individual to the authorized agent of the demanding state without the requirement of a governor's warrant if . . . (a) The individual has signed a prior waiver of extradition as a term of his or her current probation, parole . . . (b) The law enforcement agency holding the individual has received a copy of the prior waiver . . . [and] (c) The law enforcement agency has received photographs, fingerprints, or other evidence that properly identify the individual . . . ." MICH. COMP. LAWS § 780.25a.

Defendant has provided evidence, in the form of an affidavit by Detective Jackie Loving, extradition officer of the Wayne County Sheriff's Department, that the above provisions were complied with. (Dkt. 16 at Ex. E.) Ms. Loving's affidavit asserts that she was aware of the

---

[9]A majority of the states have also entered into an Interstate Agreement on Detainers ("IAD"), including Michigan and South Carolina. 18 App. 2, § 2; MICH. COMP. LAWS § 780.601; S.C. CODE 1976 §§ 17-11-10 to 17-11-80. The provisions of the IAD, including the pre-transfer hearing and speedy trial (180 day) requirements, "are applicable only after the a detainer has been lodged." *Barnett v. Clark*, No. 1:06-cv-235, 2008 WL 189856, *4 (E.D. Tenn. Jan. 22, 2008). *Accord Martinez v. Hemingway*, No. 01-CV-71565-DT, 2001 WL 902713, *2 (E.D. Mich. June 18, 2001) ("Only when the government files a detainer against a defendant does it become bound by the I.A.D.'s provisions . . . including the 180 day rule . . . ."). In the instant case, there is no evidence that a detainer was ever lodged. It appears that the extradition process occurred because of the presence of an outstanding warrant on the LEIN and telephonic confirmation of the same. (Dkt. 16 at Ex. D, E ¶¶ 6-7.) Therefore, the IAD has no application to the instant case.

[10]"Any person arrested in this state charged with having committed any crime . . . or broken the terms of his or her bail, probation, or parole may waive the issuance and service of the warrant provided for in sections 6 and 7 and all other procedure incidental to extradition proceedings, by executing or subscribing in the presence of a judge of any court of record within this state a writing that he or she consents to return to the demanding state . . . the judge shall inform the person of his or her rights . . . ." MICH. COMP. LAWS § 780.25.

extradition waiver signed by Plaintiff as a condition of his parole in South Carolina (Dkt. 16 at Ex. A ¶ 10), and that she confirmed the existence of an arrest warrant and the identity of Plaintiff before giving him to an agent of the state of South Carolina. (Dkt. 16 at Ex. E ¶¶ 5-7.) She also confirmed that it is Wayne County's policy to comply with these requirements. (*Id.* ¶ 8.) Therefore, I suggest that no extradition laws were broken and that Defendant is entitled to summary judgment on this ground as well.

Even if any protections were withheld, where "plaintiff had previously executed a waiver of his right to contest extradition to that jurisdiction in the future . . . plaintiff cannot base a case [sic] of action upon 42 U.S.C. § 1983 based upon defendants' alleged failure to follow normal procedures to effect his extradition[.]" *Grigsby v. Keesling*, No. 88-5820, 1988 WL 129308, *1 (6th Cir. Dec. 6, 1988) (citing *Pierson v. Grant*, 527 F.2d 161, 164 (8th Cir. 1975) ("We find no basis for concluding that a pre-release waiver of extradition executed as a condition of parole must conform to a procedure"). *Accord Muhammad v. Gold*, No. 1:05-CV-146, 2007 WL 3088133, *4 (D. Vt. Oct. 23, 2007) (waiver of extradition waives any constitutional rights implicated by return for a parole violation where plaintiff has not alleged that waiver was either unknowing or involuntary); *Aaron v. Holt*, No. 2:04-CV-786-MHT, 2006 WL 2190591, *4 (M.D. Ala. Aug. 2, 2006) (citing *Scull v. New Mexico*, 236 F.3d 588, 596 (10th Cir. 2000) (since plaintiff "had previously signed a waiver of extradition as condition of parole, he had neither a constitutional nor a statutory right to specific extradition procedures.")); *Burrows v. Cherokee County Sheriff's Officers*, No. 00-3333-GTV, 2005 WL 1185620, *2 (D. Kan. May 18, 2005) ("[t]he failure to follow the procedures in the uniform act does not subject defendants to liability for damages under 42 U.S.C. § 1983 where the plaintiff signed a pre-release waiver of extradition rights."). Plaintiff has not alleged that his waiver was made unknowingly or involuntarily. Involuntariness may not

12

be presumed based on the mere fact that parole is conditioned upon a waiver of extradition rights. *See Forester v. California Adult Authority*, 510 F.2d 58, 61 (8th Cir. 1975) (plaintiff "claims that conditioning his parole upon the execution of an extradition waiver was per se coercion. That is not the law"); *Scull, supra*. Therefore, even if the extradition laws were not complied with, I suggest that Defendant is entitled to summary judgment based on Plaintiff's waiver of extradition rights.

### 3. Vicarious Liability

Defendant also argues that he cannot be held vicariously liable for the acts of his employees. (Dkt. 16 at 9.) Liability under section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26, 102 S. Ct. 445, 70 L. Ed. 2d 509 (1981); *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Thus, section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See, e.g., Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir. 1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Plaintiff has not alleged that Defendant Evans had any knowledge of the facts underlying his claims or that he (or the county itself) implicitly encouraged, authorized, approved or acquiesced in any way. Indeed, Plaintiff states that he "is in agreement that the defendant Warren C. Evans has no personal knowledge, and sued him in his official capacity." (Dkt. 21 at 16.) Merely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint, however, is not enough to sustain recovery under section 1983. *See Flagg Bros. v. Brooks*, 436

13

U.S. 149, 155-57, 98 S. Ct. 1729, 56 L. Ed. 2d 185 (1978); *Gilmore v. Corrections Corp. of America*, 92 Fed. App'x 188, 190 (6th Cir. 2004). Therefore, I suggest that Defendant is entitled to summary judgment on this ground as well.

**4.    Conclusion**

For all the reasons stated above, I suggest that summary judgment should be granted in favor of Defendant and that this case be dismissed in its entirety with prejudice.

**III.    REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

                 s/ *Charles E Binder*
                 CHARLES E. BINDER
Dated: April 9, 2008            United States Magistrate Judge

## **CERTIFICATION**

      I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Aaron C. Thomas, served on Garnett DuBose via First-Class Mail and served on U.S. District Judge Borman in the traditional manner.


Date: April 9, 2008        By     s/Patricia T. Morris
                                           Law Clerk to Magistrate Judge Binder